UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEN BOURLAND,

                    Plaintiff,

          v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, et al.,

                    Defendants.

CASE NO. C13-6056 BHS

ORDER GRANTING IN PART,
DENYING IN PART,
RESERVING RULING, AND
REQUESTING SUPPLEMENTAL
BRIEFING ON PLAINTIFF'S
MOTION FOR LEAVE TO
CONDUCT DISCOVERY

        This matter comes before the Court on Plaintiff Ken Bourland's ("Bourland")

motion for leave to conduct discovery (Dkt. 20).  The Court has considered the pleadings

filed in support of and in opposition to the motion and the remainder of the file and

hereby grants the motion in part, denies it in part, reserves ruling, and requests

supplemental briefing as discussed herein.

## I. PROCEDURAL HISTORY

        On December 10, 2013, Bourland filed suit against Defendants Hartford Life and

Accident Insurance Company ("Hartford"), U.S. Bank, and U.S. Bank Long-Term

1   Disability Plan (collectively "Defendants").  Dkt. 1.  Bourland challenges Hartford's

2   decision to terminate his long-term disability benefits.  *Id.*  Bourland alleges that Hartford

3   has a conflict of interest.  *Id.* at 34.  Bourland also alleges that Hartford's medical

4   reviewers and evaluation companies have a financial bias.  *Id.* at 36.

5          The Employee Retirement Income Security Act of 1974 (ERISA) governs

6   Bourland's claims.  *See* 29 U.S.C. § 1132.

7          On April 23, 2014, Bourland sent discovery requests to Defendants.  Dkt. 21,

8   Declaration of Lisa V. Benedetti ("Benedetti Dec."), Exs. A,  B, and C.  On May 27,

9   2014, Defendants responded with general objections to most of Bourland's requests.

10  Benedetti Dec., Exs. E and F.

11         On July 25, 2014, the parties held a telephonic discovery conference, but did not

12  resolve the discovery issues.  Benedetti Dec., Ex. G.

13         On July 28, 2014, Bourland filed a motion for leave to conduct discovery.  Dkt.

14  20.  On August 18, 2014, Hartford responded.  Dkt. 25.  On August 22, 2014, Bourland

15  replied.  Dkt. 29.

16                                **II. DISCUSSION**

17         Bourland seeks discovery outside of the administrative record regarding

18  Hartford's alleged conflict of interest, the credibility of Hartford's medical reviewers, and

19  other matters.  Dkt. 20 at 2.  In response, Hartford argues that discovery should be limited

20  to the administrative record.  Dkt. 25 at 6–9.  Hartford also argues that Bourland's

21  requests are a fishing expedition and not narrowly tailored.  *Id.* at 17.

22

1   **A.      Discovery in ERISA Cases**

2          The availability and scope of discovery in ERISA cases "is directly related to the

3   standard of review employed by the Court." *Santos v. Quebecor World Long Term*

4   *Disability Plan*, 254 F.R.D. 643, 647 (E.D. Cal. 2009). To determine the applicable

5   standard of review, courts look at the language in the benefit plan. *Abatie v. Alta Health*

6   *& Life Ins. Co.*, 458 F.3d 955, 962–63 (9th Cir. 2006). When the plan grants discretion to

7   the administrator, abuse of discretion review applies. *Firestone Tire & Rubber Co. v.*

8   *Bruch*, 489 U.S. 101, 115 (1989). When the plan does not grant discretion, de novo

9   review applies. *Id.*

10         In Washington, however, disability insurance policies may not contain

11   discretionary clauses. *See* WAC 284-96-012.[1]  "'Discretionary clause' means a provision

12   that purports to reserve discretion to an insurer, its agents, officers, employees, or

13   designees in interpreting the terms of a policy or deciding eligibility for benefits . . . ."

14   *Id.*

15         WAC 284-96-012 therefore voids any benefit plan language that grants discretion

16   to the administrator.[2]  The standard of review becomes de novo once any discretionary

17

18         [1] The parties refer to WAC 284-44-015 (prohibiting discretionary clauses in health care
services contracts) and WAC 284-50-321 (prohibiting discretionary clauses in individual
19   disability insurance policies) throughout their court documents. *See, e.g.*, Dkts. 1, 16, 25.
Bourland's long-term disability plan is a group insurance policy. Dkt. 1, Bourland App. 3 at 24.
20   Accordingly, the applicable regulation is WAC 284-96-012 (prohibiting discretionary clauses in
group disability insurance policies).
21         [2] Courts in this district have determined that ERISA does not preempt WAC 284-96-012.
*See Landree v. Prudential Ins. Co. of Am.*, 833 F. Supp. 2d 1266, 1274 (W.D. Wash. 2011);
22   *Murry v. Anderson Bjornstad Kane Jacobs, Inc.*, 2011 WL 617384, at *3 (W.D. Wash. Feb. 10,
2011). This Court agrees with their reasoning.

1   language is invalidated.  *Landree v. Prudential Ins. Co. of Am.*, 833 F. Supp. 2d 1266,

2   1274 (W.D. Wash. 2011); *see also Firestone*, 489 U.S. at 115.

3        Under de novo review, "[t]he court simply proceeds to evaluate whether the plan

4   administrator correctly or incorrectly denied benefits, without reference to whether the

5   administrator operated under a conflict of interest."  *Abatie*, 458 F.3d at 963.  In doing so,

6   the Court considers the evidence in the administrative record.  *Opeta v. Nw. Airlines*

7   *Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007).  The Court should consider extrinsic

8   evidence "only when circumstances clearly establish that additional evidence is necessary

9   to conduct an adequate *de novo* review of the benefit decision."  *Mongeluzo v. Baxter*

10  *Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (quoting

11  *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)).  Extrinsic

12  evidence may be necessary when there are "issues regarding the credibility of medical

13  experts."  *Opeta*, 484 F.3d at 1217 (quoting *Quesinberry*, 987 F.2d at 1027).

14  **B.   Bourland's Motion**

15       **1.    Standard of Review**

16       In his complaint, Bourland invokes WAC 284-96-012 and alleges that Hartford's

17  decision should be reviewed de novo.  Dkt. 1 at 37.  Bourland makes a similar argument

18  in the parties' joint status report.  Dkt. 16 at 3.  Bourland's motion, however, is largely

19  premised on abuse of discretion review.  *See* Dkt. 20.  Hartford argues that discovery

20  should be limited to the administrative record under either standard of review.  Dkt. 25 at

21  5–6.

22

The standard of review in this case is de novo.  Bourland's benefit plan grants Hartford discretion to determine eligibility for benefits.  Dkt. 1, Bourland App. 3 at 38 ("[Hartford has] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the [benefit plan].").  WAC 284-96-012, however, voids the plan's discretionary language.  Once the plan's discretionary language is invalidated, the standard of review becomes de novo.  *See Landree*, 833 F. Supp. 2d at 1274.  Accordingly, extrinsic evidence should be considered only if the circumstances clearly establish that additional evidence is necessary.  *See Mongeluzo*, 46 F.3d at 944.

### 2. Discovery Requests

#### a. Conflict of Interest

Bourland seeks discovery regarding Hartford's alleged conflict of interest.  Dkt. 20 at 5–11.  To that end, Bourland requests an order compelling Hartford to answer the following discovery requests:

- Hartford's in-house documents and contracts regarding the handling of disability claims like Bourland's (RFP Nos. 1–2);
- Statistical data concerning Hartford's claims granting history in cases involving Dr. Brock, Dr. Schindler, and Reliable Review Services (RFP Nos. 3–5; Interrog. No. 1);
- Hartford's financial relationships with Dr. Brock, Dr. Schindler, and Reliable Review Services (RFP Nos. 6–8; Interrog. No. 2);
- Hartford's performance evaluations and compensation programs of employees involved in the decision to terminate Bourland's benefits (RFP Nos. 10–12; Interrog. No. 3).

*Id.* at 4–11.

1    Under de novo review, Hartford's alleged conflict of interest is irrelevant.  *See*

2  *Abatie*, 458 F.3d at 970.  The Court therefore denies Bourland's motion for leave to

3  conduct discovery regarding Hartford's alleged conflict of interest.

4              **b.    Credibility of Hartford's Witnesses**

5    Bourland also seeks discovery regarding the credibility of Hartford's medical

6  reviewers and evaluation companies.  Dkt. 20 at 6–10.  Bourland requests an order

7  compelling Hartford to answer two of the same discovery requests as above:

8    • Statistical data concerning Hartford's claims involving Dr. Brock,
       Dr. Schindler, and Reliable Review Services (RFP Nos. 3–5;
9      Interrog. No. 1);
     • Hartford's financial relationships with Dr. Brock, Dr. Schindler, and
10     Reliable Review Services (RFP Nos. 6–8; Interrog. No. 2).

11  *Id.* at 6–10.

12    The credibility of Hartford's medical reviewers is relevant because it goes to the

13  weight the Court will assign their medical opinions on de novo review.  Discovery

14  regarding Hartford's financial relationship with medical reviewers and evaluation

15  companies is therefore appropriate in this case.  *See Opeta*, 484 F.3d at 1217.  The Court

16  grants Bourland's motion to conduct discovery on Hartford's financial relationships with

17  Dr. Brock, Dr. Schindler, and Reliable Review Services.

18    In regards to the statistical data, Hartford argues that producing such data would

19  be a "complicated, extensive and time consuming process and analysis."  Dkt. 25 at 13;

20  *see also* Dkt. 26, Declaration of Joseph Altiere at 2.  Although Hartford provides

21  conclusory statements of this burden, Hartford does not provide specific evidence to

22  support these statements.

1   The Court asks the parties to submit supplemental briefing on the burden of

2   producing the requested statistical data.  Hartford should file its opening brief by October

3   1, 2014.  Bourland should file his responsive brief by October 3, 2014.  Briefs should be

4   no longer than ten pages.  In the meantime, the Court reserves ruling on Bourland's

5   request for statistical data.

6              **c.      Amount of Benefits at Issue**

7        Bourland seeks discovery regarding the amount of benefits at issue.  Dkt. 20 at 12;

8   *see also* Interrog. No. 6.  In response to Bourland's discovery request, Hartford provided

9   Bourland with the policy and booklet.  Benedetti Dec., Ex. E at 11.  These documents

10  provide sufficient guidance as to how Bourland's benefits should be calculated.

11  Accordingly, the Court denies Bourland's motion for leave to conduct discovery on the

12  amount of benefits at issue.

13             **d.      Administrative Record**

14       Finally, Bourland requests the administrative record and any documents that

15  Hartford relied on in making its benefit determination.  Dkt. 20 at 12; *see also* RFP No.

16  13.  Hartford has already provided Bourland with the administrative record.  Benedetti

17  Dec., Ex. E at 12.  Bourland nevertheless argues that Hartford did not to produce

18  documents that "demonstrate compliance with administrative processes and safeguards."

19  *Id.*  Bourland also argues that Hartford did not produce documents that "constitute a

20  statement of policy or guidance with respect to the Plan concerning the denied benefit for

21  [Bourland's] diagnoses."  *Id.*  Bourland therefore requests an order compelling Hartford

22  to produce those documents.  *Id.*

1    ERISA requires that claimants be given access to "all documents, records, and

2 other information relevant to the claimant's claim for benefits."  29 C.F.R. § 2650.503–

3 1(h)(2)(iii).  A document, record, or other information is considered "relevant" if it:

4    (i) Was relied upon in making the benefit determination;
     (ii) Was submitted, considered, or generated in the course of making

5    the benefit determination, without regard to whether such document,
     record, or other information was relied upon in making the benefit

6    determination;
     (iii) Demonstrates compliance with the administrative processes and

7    safeguards required pursuant to paragraph (b)(5) of this section in making
     the benefit determination; or

8    (iv) In the case of a group health plan or a plan providing disability
     benefits, constitutes a statement of policy or guidance with respect to the

9    plan concerning the denied treatment option or benefit for the claimant's
     diagnosis, without regard to whether such advice or statement was relied

10   upon in making the benefit determination.

11 29 C.F.R. § 2650.503–1(m)(8).

12    Bourland seeks documents that are "relevant to [his] claim for benefits."  29

13 C.F.R. § 2650.503–1(h)(2)(iii).  The Court therefore grants Bourland's motion on this

14 issue.  The Court orders Hartford to produce documents that ERISA regulations expressly

15 require Hartford to disclose.  *See* 29 C.F.R. § 2650.503–1(m)(8).

16    **e.    Protective Order**

17    Hartford may produce responsive documents pursuant to a protective order.

18 Hartford apparently concedes that some documents are responsive to Bourland's

19 requests, because Hartford offers to produce those documents subject to a protective

20 order. Dkt. 25 at 10.  Hartford appears to show good cause to protect its proprietary

21 documents, so the parties should be able to agree on an appropriate protective order.  *Id.*

22

1  at 10–11.  In the unlikely event that the parties are unable to agree on this issue, Hartford

2  may file a motion for a protective order covering the documents in question.

3  **III. ORDER**

4        Therefore, it is hereby **ORDERED** that Bourland's motion for leave to conduct

5  discovery (Dkt. 20) is **GRANTED in part** and **DENIED in part**.  The Court

6  **RESERVES ruling** on Bourland's request for statistical data.  The Court requests

7  additional briefing on the burden of producing the statistical data, and Bourland's motion

8  is renoted for October 3, 2014.

9        Dated this 24th day of September, 2014.

10

11

12  BENJAMIN H. SETTLE
   United States District Judge

13

14

15

16

17

18

19

20

21

22